UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHANNES GABRIEL BADOU JACK,<br><br>    Plaintiff<br><br>vs.<br><br>RINGLEADER BOXING MANAGEMENT COMPANY, LLC and ROE CORPORATIONS I through V,<br><br>    Defendants | Case No.: 2:14-cv-00318-JAD-PAL<br><br>**Order Granting Defendant's Motion to Dismiss and Denying Motion for Summary Judgment as Moot** |

This contract action arises out of plaintiff Johannes Gabriel Badou Jack's allegations that he was pressured into a void management agreement requiring that 33% of Jack's boxing earnings be paid to defendant Ringleader Boxing Management LLC. Jack contends that because Ringleader is not a licensed manager or entitled to hold itself out as his manager, Ringleader should be prevented from collecting any of Jack's boxing earnings. Ringleader moves to dismiss[1] Jack's complaint for lack of diversity jurisdiction, and Jack moves for summary judgment.[2] I find that Jack's case falls short of the $75,000 amount-in-controversy threshold for diversity jurisdiction, grant Ringleader's motion to dismiss,[3] and deny Jack's summary-judgment motion as moot.

---

[1] Doc. 8.

[2] Doc. 3.

[3] Doc. 8.

**BACKGROUND**

Jack was born in Stockholm, Sweden.[4] He competed in the 2008 Olympic Games and later came to the United States on a tourist visa to determine whether he should relocate his professional boxing career.[5] In January 2011, after securing the appropriate visa, Jack moved to the United States where he was introduced to Ringleader's owner, Steven Heid.[6] Jack alleges that Heid held himself out as a licensed manager in all boxing jurisdictions including Nevada and that Heid promised Jack he would manage Jack's professional career by securing profitable promotional engagements.[7] Jack relied on Heid's representations and, without legal representation, Jack signed a management agreement with Ringleader in January 2011.[8] The five-year deal contemplated that 33% of Jack's gross income would be paid to Ringleader and obligated Ringleader to pay Jack's monthly living expenses and a monthly stipend for the first year of the agreement.[9]

During the first 15 months of the agreement, Jack fought in six professional boxing matches.[10] Although Ringleader played no role in securing matches for Jack in 2011, it collected $1,980 in management fees.[11] After the first year of the agreement, Ringleader stopped paying Jack's living expenses and monthly stipend and advised him that he should secure alternative employment between matches at a place that would pay him under the table to circumvent his immigration status.[12] In 2012, even though Ringleader represented to Jack that its Florida manager's license and Florida management-agreement filing were sufficient for Nevada, Jack discovered that

---

[4] Doc. 7 at 4. This background section is taken from the allegations in the case and is not intended as, and shall not be construed, as findings of fact.

[5] *Id*. at 4–5.

[6] *Id*.

[7] *Id*. at 7.

[8] *Id*. at 6.

[9] *Id*. at 7–8.

[10] *Id*. at 9.

[11] *Id*. at 10.

[12] *Id*. at 10–11.

the management agreement was invalid and that Ringleader's Florida license and filing were not sufficient for Nevada.[13] Unable to afford living expenses, Jack returned to Sweden.[14] In 2013, Jack returned to Las Vegas, dropped his co-promoters, and signed with Mayweather Promotions, LLC.[15] Since signing with Mayweather, Jack has enjoyed increased purse amounts, more exposure, and a higher boxing ranking.[16] Although Jack has not been in contact with Ringleader since discovering the misrepresentations, Ringleader has continued to collect 33% of Jack's purses and to date has been paid $34,815.[17] Ringleader expects to be paid approximately $24,750 in 2014, $24,750 in 2015, and $12,375 in the first six months of 2016.[18] In this lawsuit, Jack seeks restitution for the money that has already been paid to Ringleader and to prevent Ringleader from collecting future earnings.[19]

## DISCUSSION

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." "In this action, as in all actions before a federal court, the necessary and constitutional predicate for any decision is a determination that the court has jurisdiction—that is the power—to adjudicate the dispute."[20] Federal Rule of Civil Procedure 12(b)(1) permits a defendant to seek dismissal of a claim or action for a lack of subject-matter jurisdiction. "Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that

---

[13] *Id*. at 12.

[14] *Id*. at 12–13.

[15] *Id*. at 13–14.

[16] *Id*.

[17] *Id*. at 14.

[18] *Id*.

[19] *Id.* at 21.

[20] *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998).

are sufficient to establish subject-matter jurisdiction."[21] Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court.[22]

Under 28 U.S.C §1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where there is complete diversity between the parties, and the amount in controversy exceeds the sum of or value of $75,000." When a plaintiff sues in federal court, this amount is determined from the face of the pleadings as long as the sum claimed by the plaintiff is made in good faith.[23] Plaintiff's ultimate inability to recover $75,000 does not evince bad faith, however, or require dismissal for lack of jurisdiction.[24] A federal court has subject-matter jurisdiction unless the suit obviously fails to meet the necessary amount.[25]

Jack's claims fall short of the amount in controversy required to trigger federal jurisdiction. There is no dispute that Jack and Ringleader are completely diverse; the issue is whether Jack has satisfied the $75,000 amount-in-controversy threshold. I recognize that Jack has pled several forms of declaratory relief and unjust enrichment stemming from both past payments and anticipated future payments in excess of $75,000.[26] But Jack has improperly pled anticipated future damages under unjust-enrichment and declaratory-judgment theories; as future damage are not recoverable under either claim, Jack cannot satisfy the $75,000 threshold for federal jurisdiction.

---

[21] *Penrose v. Fritsch*, 2014 U.S. Dist. LEXIS 145667, at *3 (D. Nev. Oct. 10, 2014).

[22] *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

[23] *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (quoting *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).

[24] *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–289 (1938)).

[25] *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (citing *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000)).

[26] Doc. 19 at 10.

**A.     Jack's Unjust Enrichment Claim is Not Worth $75,000.**

"Unjust enrichment is the unjust retention of [another's money] against fundamental principles of justice or equity and good conscience."[27] The Nevada Supreme Court defines the unjust-enrichment elements as: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation by the defendant of the benefit, and (3) acceptance and retention of the benefit by the defendant.[28]

Jack tries to do too much with his unjust-enrichment claim: the remedy for unjust enrichment is the return of benefits previously conferred not those yet to be conferred. Even if Jack were to prevail completely on his unjust-enrichment claim, the most he could recover would be past benefits actually conferred to Ringleader.[29] Thus, the maximum value of Jack's unjust-enrichment damages is $34,815 in past management fees conferred to Ringleader from Jack's winnings to date. I recognize that, if the contract is enforced, Ringleader expects to be paid approximately $24,750 in 2014, $24,750 in 2015, and $12,375 in the first six months of 2016.[30] Adding the amount Ringleader has been paid ($34,815) to the money it expects to be paid through the end of the contract in 2016 ($61,875) results in a combined total of $96,690, an amount that well exceeds the amount-in-controversy requirement but not until some time in 2015.[31] Because we calculate the amount in controversy at the time the complaint is filed, not years into the future, Jack's unjust-enrichment claim fails to satisfy the jurisdictional threshold.[32]

---

[27] *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (1992) (internal quotation marks omitted).

[28] *Topaz*, 839 P.2d at 613 (quoting *Unionamerica Mtg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)).

[29] *Id.* (Nev. 1992) (quoting *Unionamerica Mtg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)).

[30] Doc. 19 at 11.

[31] *Id.* at 10–11.

[32] *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1110–11 (9th Cir. 2001).

5

### B.     Declaratory Judgment

Jack's only other claim is for declaratory relief. Nothing in that claim increases the damages to reach the jurisdictional threshold.[33] The [Federal Uniform] Declaratory Judgment Act confers authority on any United States court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[34] However, the party seeking relief is "required to establish a case of actual controversy within the court's jurisdiction."[35] The Declaratory Judgment Act is "not an independent basis for subject-matter jurisdiction."[36] It is a procedural law that "provides an additional remedy, but only in cases resting on some independent basis of federal jurisdiction."[37] In other words, the plaintiff must establish jurisdiction by either diversity or a federal question; only then can he seek a declaratory judgment.

Jack's only other claim—$34,815 unjust-enrichment claim—fails to establish the federal jurisdiction he needs to seek relief under the Declaratory Judgment Act.[38] Accordingly, Jack has failed to plead a claim over which this court has jurisdiction, and this action must be dismissed for lack of subject-matter jurisdiction.

---

[33] *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *Cal. Dump Truck Owners Assoc. v. Associated Gen Contractors*, 562 F.2d 607 (9th Cir. 1977)).

[34] *Tradebay, LLC v. eBay.*, 278 F.R.D 597, 604 (2011) (quoting 28 U.S.C. § 2201(a)) (internal quotation marks omitted).

[35] *Id.*

[36] *Id.* (quoting *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950) (internal quotation marks omitted).

[37] *Miller-Wohl Co., Inc. v. Comm'r of Labor & Indus., State of Mont.*, 685 F.2d 1088, 1090 (9th Cir. 1982) (citing *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267 (9th Cir. 1982)); *see also Staacke v. United States Sec'y of Labor*, 841 F.2d 278, 280 (9th Cir. 1988) (citations omitted) (writing that "[i]t is well settled that the Declaratory Judgment Act 'does not itself confer federal subject matter jurisdiction' . . . but merely provides an additional remedy in cases where jurisdiction is otherwise established."); *Krave Entm't, LLC v. Liberty Mut. Ins. Co.*, 667 F. Supp. 2d 1232, 1237 (D. Nev. 2009) (writing that this procedural nature is why the court applies the federal Declaratory Judgment Act, rather than the Nevada Declaratory Judgment Act, while it sits in diversity); *id.* (citing *Geni-Chlor Int'l, Inc. v. Multisonics Dev. Corp.*, 580 F.2d 981, 984 (9th Cir. 1978) (writing neither act "grants[s] jurisdiction where it otherwise would not exist," but each "merely provides an additional procedural remedy to the court."); *Builders Ass'n of N. Nev. v. City of Reno*, 776 P.2d 1234, 1234 (1989).

[38] *See supra* p. 5.

**CONCLUSION**

Accordingly, with good cause appearing and no reason for delay,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that defendant Ringleader Boxing Management LLC's motion to dismiss (**Doc. 8**) is **GRANTED**. Plaintiff's complaint is dismissed without prejudice for lack of subject-matter jurisdiction.

This action having been dismissed, **IT IS FURTHER ORDERED** that Plaintiff Jack's motion for summary judgment (**Doc. 3**) is **DENIED** as moot.

The Clerk of Court is instructed to **VACATE the motion hearing** set for November 25, 2014, and close this case.

DATED November 14, 2014.

_____
Jennifer A. Dorsey
United States District Judge